TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
SEAN D. PETERSON (Cal. Bar No. 274263)
Assistant United States Attorney
Riverside Branch Office
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6930
     Facsimile: (951) 276-6202
     E-mail:    sean.peterson2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SPARKLE SHORALE NELSON, <br><br> Defendant. | ED CR No. 19-213-JGB-1 <br><br> PLAINTIFF'S RESPONSE TO PRESENTENCE REPORT AND SENTENCING POSITION FOR DEFENDANT SPARKLE SHORALE NELSON <br><br> Hearing Date: January 10, 2022 <br> Hearing Time: 2:00 p.m. <br> Location:    Courtroom of the Hon. Jesus G. Bernal |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Sean D. Peterson, hereby files its response to presentence report and sentencing position for defendant SPARKLE SHORALE NELSON.

This response to presentence report and sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 28, 2021

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office

/s/
SEAN D. PETERSON
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On June 5, 2019, defendant SPARKLE SHORALE NELSON ("defendant" or "NELSON") was charged in all twenty-one counts of an indictment charging her and her co-conspirators with conspiracy, in violation of 18 U.S.C. § 1349, mail fraud, in violation of 18 U.S.C. § 1341, wire fraud, in violation of 18 U.S.C. § 1343, aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), and financial aid fraud, in violation of 20 U.S.C. § 1097(a).

On February 8, 2021, defendant pleaded guilty pursuant to a plea agreement to count one (conspiracy) of the indictment.  Pursuant to the plea agreement, at the time of sentencing, the United States agreed to move to dismiss the remaining counts of the indictment vis-à-vis defendant.

The United States Probation Office ("USPO") has issued a Presentence Report ("PSR") calculating defendant's total offense level at twenty-five, and her Criminal History Category as I, resulting in a Guidelines sentencing range of 57-71 months' imprisonment.  The United States agrees with the Probation Officer's total offense level calculation and criminal history calculation. The United States recommends that this Court impose a low-end of the Guidelines sentence of 57 months' imprisonment, and a $100 special assessment.

**II.  STATEMENT OF FACTS**

**A.   AGREED UPON FACTS**

During the change of plea hearing, and in the factual basis of the plea agreement, defendant admitted the following:

Beginning on or about a date unknown, but no later than in or about February 2013, and continuing to in or about December 2014, in San Bernardino County, and elsewhere, defendant conspired and agreed with SHYKEENA MONIQUE JOHNSON, also known as ("aka") "Shy" ("JOHNSON"), JERRIKA ELDRENA LASHAY JOHNSON, aka "Muffin," aka "Big Sis," aka "Jerrika Carter" ("CARTER"), and others to use the mails and interstate wires to knowingly and with the intent to defraud, devise, participate in, and execute a scheme to defraud the United States Department of Education ("the Department") as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

As part of the conspiracy, defendant, JOHNSON, and CARTER, would obtain personal identifying information, including names and social security numbers of other individuals, hereinafter referred to as "straw students." Dozens of straw students willingly provided their personal identifying information directly to defendant, JOHNSON, or CARTER, in exchange for money, knowing that their personal identifying information would be used to obtain Federal Student Aid ("FSA"), although they did not intend to attend school. Defendant, JOHNSON, and CARTER, also used intermediaries or recruiters to obtain the personal identifying information of students. While most straw students willingly provided their personal identifying information to defendant, NELSON, or JOHNSON, the means of identification of at least ten straw students were used without their approval or authority.

Defendant, and other co-conspirators, would complete the application and enrollment process with Fullerton College among other colleges, using the straw student's name and personal identifiers. Defendant, and other co-conspirators, would use the personal identifying information of the straw students to file FAFSAs on the Internet for financial aid, but would not comply with the preparer-related requirement to sign the application and include the preparer's social security number.

Defendant, and other co-conspirators, would complete Master Promissory Notes on the Internet for the straw students. By completing Master Promissory Notes and filing FAFSAs from their computers in California, defendants and other co-conspirators would send interstate wires to Department servers in Texas.

Defendant, and other co-conspirators, would cause Fullerton College, among other colleges, to disburse money to the straw students from the Department by depositing the financial aid onto Higher One debit cards, which were mailed to addresses belonging to defendant, and other co-conspirators, including some straw students. Defendant, and other co-conspirators, would activate the Higher One debit cards in the names of the straw students. Defendant, and other co-conspirators, would cause the FSA funds to be transferred from the Higher One accounts in the names of certain straw students to other Higher One accounts, which defendant, and other co-conspirators, controlled.

Defendant, and other co-conspirators, would not use the funds disbursed to the accounts of straw students for permitted educational costs. Instead, defendant, and other co-conspirators, would use the money for their personal expenses.

3

In sum, the total amount of FSA initially disbursed by ED to Fullerton College on behalf of straw students and as a result of this conspiracy was approximately $1,080,172. However, after accounting for money reimbursed by Fullerton College to ED, the actual loss to ED was approximately $869,596.75.

In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendant and co-conspirators, committed, and willfully caused others to commit, various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

- On or about August 9, 2014, defendant, and other coconspirators, submitted a FAFSA online from an IP address in Victorville, California to the Department Server in Plano, Texas, causing the transmission of an interstate wire, using personal identifying information belonging to straw student D.P., who was incarcerated at the time in a state penal institution, and who was unable to attend classes online or in person.

- On or about August 13, 2014, Higher One mailed a Higher One debit card for straw student D.P. to an address in Barstow, California, an address utilized by coconspirators.

- On or about October 22, 2014, CARTER sent a text message to defendant stating "U have [straw student D.P.] and [straw student T.T.] card."

- On or about October 22, 2014, defendant sent a text message to CARTER stating "Omg what's [straw student D.P.] info so I can transfer & what's there pins?"

- On or about October 22, 2014, CARTER sent a text message to defendant containing the same email address Higher One had on file for straw student D.P.
- On or about November 17, 2014, defendant received the means of identification for straw student E.P. from CARTER via a text message. The transfer and possession of E.P.'s means of identification on this day were acts in furtherance of the conspiracy, and they followed a series of prior acts by co-conspirators involving the misappropriation and misuse of E.P.'s means of identification to fraudulently obtain FSA and thereby to enrich themselves. For example, co-conspirators had previously used E.P.'s name and other means of identification to apply to attend Fullerton College, repeatedly apply for FSA, execute a master promissory note, and to obtain disbursements of thousands of dollars of FSA in E.P.'s name.

**III. SENTENCING GUIDELINES CALCULATION**

The United States Probation Office ("USPO") determined that defendant has a total offense level of twenty-five, determined by a base offense level of seven, pursuant to U.S.S.G. § 2B1.1(a)(1), an increase in fourteen levels for an offense involving a loss of over $550,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), an increase in two levels for ten or more victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), an increase in two levels for using an ID to produce an ID, and an increase in three levels for aggravating role, pursuant to U.S.S.G. § 3B1.1(b), minus three levels for acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a), (b).  (PSR ¶¶ 34-45.)  The United States agrees with the total offense level

calculated by the USPO, which is consistent with the Sentencing Guidelines factors agreed upon by the parties and included in the plea agreement filed in this case.  (*See* CR 98.)  The United States also agrees with the USPO's calculation of defendant's criminal history points (zero), which results in a Criminal History Category of I. (PSR ¶¶ 47-53.)

**IV.   ANALYSIS OF THE 18 U.S.C. § 3553(a) FACTORS**

A low-end Guidelines sentence of 57 months' imprisonment is reasonable in light of the factors listed under 18 U.S.C. § 3553(a). Such a sentence would reflect the nature and circumstances of the offense and the history and characteristics of defendant, among other relevant sentencing factors.

The conspiracy in this case, and defendant's actions in furtherance of it, raise multiple concerns.  First, defendant did not engage in just one or two isolated bad acts.  The conspiracy in this case amounted to an agreement between defendant and her charged co-defendants to operate a financial aid fraud mill for over one-and-a-half years.  The over $800,000 in actual losses to the Department of Education, and the over $1,000,000 in potential losses to it, reflect the massive scope of the fraud mill.  Second, defendant, and her co-defendants, did not operate at the bottom rung of the conspiracy. They invited people to participate in the scheme, and used recruiters to involve other people (or other people's personal identifiers) in the scheme.  Thus, defendant, and her co-defendants, enticed other people to defraud the government, and they directed them in doing so. Third, although many straw students were in fact willing participants or co-conspirators, not all of them were; twelve of them had their identities and personal identifiers used without their permission.

Apart from the invasion of privacy involved in using a person's name and identifiers without his/her permission, fraudulently obtaining financial aid in that person's name, may (at least initially) prohibit that person from legitimately obtaining financial aid in the future.

On the mitigating side of the ledger, defendant timely admitted responsibility for her actions after charges issued in this case, saving the prosecution from engaging in unnecessary trial preparation.  She is also the mother of three young children, and all of those children live with her.  She also suffers from a debilitating medical condition.

In sum, there are aggravating and mitigating circumstances present in this case, which are appropriately reflected in defendant's Guidelines computation.  The punishment in this case should serve to deter defendant and others from engaging in similar conduct in the future.  Thus, the recommended sentence would serve to promote respect for the criminal laws and would serve to protect the public from future crimes by this defendant.  In addition to justly reflecting the seriousness of defendant's crime, a 57-month prison sentence would also justly account for defendant's history and characteristics, as explained above.  Such a sentence would be "sufficient, but not greater than necessary," to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2).  18 U.S.C. § 3553.

**V.   AVOIDING UNWARRANTED SENTENCING DISPARITIES**

Pursuant to 18 U.S.C. 3553(a)(6), in imposing a sentence, one of many factors the Court must consider is the need "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"

In considering the appropriate sentence for defendant Nelson, it is appropriate for the court to consider the sentence it imposed on co-conspirator Johnson-30 days' imprisonment, in addition to other terms (CR 122, 123)-however, the co-conspirator's sentence alone does not dictate the appropriate period of incarceration in this case.

Co-conspirator Johnson presented individualized mitigating factors that the Court determined weighed in favor of a downward variance.  Those factors were largely unrelated to co-defendant Johnson's conduct in the case at issue, or her criminal history. While this Court should also weigh defendant Nelson's proffered mitigating information, in doing so it will make an individualized assessment as to how that information impacts the appropriate sentence for defendant.  This Court should not import an individualized non-criminal conduct or criminal history related assessment it made for a different defendant to this defendant.  It may have been a different situation if the Court had described the variance granted to co-defendant Johnson as based on criminal conduct or criminal history related issues.

Furthermore, unwarranted sentencing disparity is just one factor for the Court to consider, and it does not trump the other 3553(a) factors.  See United States v. Marcial-Santiago, 447 F.3d 715, 719 (9th Cir. 2006) ("Even if this [sentencing] disparity were assumed to be unwarranted, however, that factor alone would not render Appellants' sentences unreasonable; the need to avoid unwarranted sentencing disparities is only one factor a district court is to consider in imposing a sentence.").

Thus, this Court should consider the sentence it imposed on co-conspirator Johnson in reaching an appropriate sentence for

8

defendant, however, co-conspirator Johnson's sentence should not disproportionately impact the Court's sentencing determination for defendant.

**VI.   RESTITUTION**

Consistent with the plea agreement, and the PSR, the United States requests that the Court order defendant to pay restitution to the United States Department of Education, in the amount of $869,596.75.

**VII.  CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court impose a low-end Guidelines sentence of 57 months' imprisonment, followed by a 3-year period of supervised release, and a mandatory special assessment of $100.